UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------- X
NYSE GROUP, INC.,                     :

       Plaintiff,                    :

  -against-                            :    Case No. _____

THE MCMAHAN PHOTO ART GALLERY &       :    **COMPLAINT**
ARCHIVE, and
ROBERT MCMAHAN,                       :    **JURY TRIAL DEMANDED**

       Defendants.                   :
------------------------------------- X

Plaintiff NYSE Group, Inc. ("NYSE Group" or "Plaintiff"), by its attorneys, DLA Piper LLP (US), brings this action against defendants The McMahan Photo Art Gallery & Archive ("Photo Archive") and Robert McMahan ("McMahan") (collectively, "Defendants") for injunctive relief and damages under the laws of the United States and the laws of the State of New York as follows:

## NATURE OF THE COMPLAINT

1. This is an action for the following: (a) federal trademark infringement in violation of 15 U.S.C. § 1114; (b) unfair competition in violation of 15 U.S.C. § 1125(a); (c) dilution under 15 U.S.C. § 1125(c); (d) trademark infringement and unfair competition under New York State common law; and (e) violation of New York General Business Law § 360-*l*.

## PARTIES

2. NYSE Group is a corporation, duly formed and existing under Delaware law, and has a corporate address at 11 Wall Street, New York, NY 10005.

3. Upon information and belief, Photo Archive is an unincorporated business operating in New York with a principal place of business at 68 Jay Street, Suite 201, Brooklyn, NY 11201.

4. Upon information and belief, McMahan is an individual and owner of Photo Archive, and has an office at 68 Jay Street, Suite 201, Brooklyn, NY 11201.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the claims in this action under 28 U.S.C. §§ 1331 and 1338 because this action involves substantial claims by NYSE Group of trademark infringement and unfair competition arising under 15 U.S.C. §§ 1114 and 1125.

6. This Court has supplemental jurisdiction over the claims in this complaint that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

7. To the extent that Photo Archive is an entity capable of being sued, this Court has personal jurisdiction over Photo Archive by reason of (a) the fact that it is domiciled and has its headquarters in the State of New York, at 68 Jay Street, Suite 201, Brooklyn, NY 11201; and (b) the claims of this Complaint arise out of Photo Archive's transaction of business within the State of New York.

8. This Court has personal jurisdiction over McMahan because (a) upon information and belief, he is domiciled in the State of New York; (b) his transaction of business through Photo Archive that gives rise to the claims of this Complaint occurred in New York, and (c) he operates Photo Archive from the latter's headquarters office at 68 Jay Street, Suite 201, Brooklyn, NY 11201.

9. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are deemed to reside in this district and to be subject to personal jurisdiction in this district at the time the action commenced.

10. Venue is also proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims of this Complaint herein occurred in this district.

## FACTS RELEVANT TO ALL CLAIMS

### NYSE Group's Operations and Valuable Marks

11. NYSE Group operates the oldest stock exchange in the United States and the best known exchange in the world: the New York Stock Exchange, founded in 1792.

12. The New York Stock Exchange has been located at 11 Wall Street in New York City since at least 1922.

13. Through the New York Stock Exchange, NYSE Group provides the public with an organized forum for buying and selling securities. The New York Stock Exchange is a regulated central market that provides liquidity, fairness in pricing or auctioning, and management of risks through settlement, delivery, or clearing.

14. Over 2,000 companies have their primary listing on the New York Stock Exchange. Over one trillion shares of stock are traded annually on the New York Stock Exchange.

15. Since at least as early as 1863, and through the present date, NYSE Group (and its predecessors) have continuously and extensively used the trademarks NYSE and NEW YORK STOCK EXCHANGE (the "NYSE Marks") in connection with conducting a securities exchange and providing other services connected therewith. For example, NYSE Group has continuously

and extensively used the NYSE Marks in marketing materials to bring buyers and sellers of publicly traded companies together.

16. In recognition of the value of the NYSE Marks, in which NYSE Group has substantial common law rights, NYSE Group (and its predecessors) sought and obtained U.S. Trademark Registration Nos. 924,870 and 909,350 for NEW YORK STOCK EXCHANGE and NYSE, respectively (the "Registrations"). The Registrations are for "conducting a securities exchange and providing other services connected therewith." A true and correct copy of the Registrations are attached hereto as Exhibit A.

17. The Registrations are valid and subsisting and in full force and effect. The NYSE Marks have become incontestable by operation of law pursuant to 15 U.S.C. § 1065. Moreover, the Registrations constitute prima facie evidence of the validity of the NYSE Marks and Registrations, NYSE Group's ownership of the NYSE Marks, and its exclusive right to use the NYSE Marks.

18. The NYSE Group also has a related registration via U.S. Trademark Registration No. 1,761,655 for NEW YORK STOCK EXCHANGE (and façade design) for "conducting a securities exchange and related stock market services."

19. In the more than 150 years since its predecessors' first use of NEW YORK STOCK EXCHANGE and NYSE, NYSE Group (and its predecessors) has invested hundreds of millions of dollars, as well as other resources, in the promotion, advertising, and development of its business, and to create a primary association in the public's mind between the NYSE Marks and the services provided by NYSE Group, including exchange services. The NYSE Marks are prominently featured in NYSE Group's advertising, promotion, and marketing of its services. The NYSE Group owns the domain name www.nyse.com, among other similar URLs, through

which it markets, promotes, and offers for sale its products and services, including exchange services. The NYSE Group has received extensive fee revenue related to its exchange services offered in commerce in the United States, including in the State of New York, under the NYSE Marks.

20. As a result of NYSE Group's investments in the NYSE Marks, it has earned enormous goodwill and commercial recognition for the NYSE Marks. The NYSE Marks have come to mean and are understood by consumers throughout the United States as identifying and distinguishing NYSE Group's exchange services from those of its competitors.

21. The NYSE Marks are widely recognized by the general consuming public of the United States as a designation of origin of the services of NYSE Group, and are therefore "famous" within the meaning of 15 U.S.C. § 1125(c).

22. In addition to its core activities, NYSE Group sells merchandise displaying and/or affixing the NYSE Marks. For example, NYSE merchandise is sold at the website https://shop.nyse.com/collections/all-nyse-branded-products.

23. NYSE Group has been selling merchandise at the website https://shop.nyse.com since at least 2015.

24. As a result of NYSE Group's use of its trademarks in connection with these goods, consumers recognize that the goods originate with NYSE Group.

**Defendants' Infringing Activities**

25. Upon information and belief, Defendants, through Defendant Photo Archive, sell merchandise including greeting cards to consumers through the website http://www.mcmahanphoto.com (the "McMahan Website").

26. Upon information and belief, in April 2018, and long after NYSE Group began use of the NYSE Marks, Defendants began to use NYSE Group's marks NYSE and NEW YORK STOCK EXCHANGE in connection with advertising its merchandise (the "Infringing Marks").

27. For example, Defendants use the mark NEW YORK STOCK EXCHNAGE to sell merchandise at the following websites: (a) http://www.mcmahanphoto.com/wall-street-financial-district-christmas-holiday-cards.html; (b) http://www.mcmahanphoto.com/newyorkstockexchangechristmascards.html; (c) http://www.mcmahanphoto.com/lc570--newyorkstockexchangewilkesbuildingphoto.html; (d) http://www.mcmahanphoto.com/lc1532--new-york-stock-exchange-stock-brokers-1963-photo.html; (e) http://www.mcmahanphoto.com/rm100517-gc1wall-street-new-york-stock-exchange-tree-christmas-boxed-greeting-cards.html; and (f) http://www.mcmahanphoto.com/rm0412250844-gc8-newyorkstockexchangechristmasboxed-greeting-cards.html.

28. Upon information and belief, Defendants' first use of the Infringing Marks occurred many years after the NYSE Marks had become famous within the meaning of 15 U.S.C. § 1125(c).

29. Upon information and belief, since April 2018 and continuing through the date of this Complaint, Defendants have used the Infringing Marks to promote, advertise, and sell Defendants' services, with the intent or likely result of unfairly and unlawfully profiting from the enormous goodwill and commercial recognition enjoyed by the NYSE Marks.

30. Defendants' website explicitly misleads as to the source or the content of the work. Specifically, Defendants' website prominently advertises products as "Personalized New

York Stock Exchange NYC Christmas Cards," "Personalized Patriotic New York Stock Exchange Greeting Cards," "Wall Street New York Stock Exchange Personalized Christmas Cards," and "Wall Street New York Stock Exchange Tree Personalized Christmas Cards."

31. Defendants do not need to use the NYSE Marks to describe their products, and in doing so Defendants cause it to appear as though those products are authorized or otherwise affiliated with NYSE Group. As a result, those searching online for authorized NYSE Group products are likely to find and purchase Defendants' products, and believe that those products are associated with NYSE Group.

32. Upon information and belief, McMahan is the McMahan Website's registrant, administrator, and technician. The listed contact address for McMahan and the McMahan Website provided by the registrar for the domain names corresponding to the McMahan Website is 10 Jay Street, Suite 403, Brooklyn, NY 11201.

33. Upon information and belief, Defendant McMahan chose the Infringing Marks, decided to use the Infringing Marks in connection with the McMahan Website, and wrote or authorized the writing of the descriptions of the merchandise using the Registrations.

**Defendants' Failure to Remove the Infringing Marks after Notice from NYSE Group**

34. On or about April 17, 2018, NYSE Group, through its counsel, sent a letter to Defendant McMahan at the public address of Photo Archive regarding Defendants' wrongful and illegal use of the Infringing Marks and demanding that such use cease immediately.

35. On April 27, 2018, counsel for the NYSE Group sent another letter to Defendant McMahan at the public address of Photo Archive. This letter again raised Defendants' wrongful and illegal use of the Infringing Marks and renewed the demand that Defendants immediately cease use of the Infringing Marks. On May 16, 2018, counsel for the NYSE Group sent another

letter to Defendant McMahan at the public address of Photo Archive. This letter again raised Defendants' wrongful and illegal use of the Infringing Marks and renewed the demand that Defendants immediately cease use of the Infringing Marks.

36. On June 21, 2018, Defendant McMahan responded to counsel for the NYSE Group via e-mail.

37. In the e-mail, Defendant McMahan stated "This is a reply to obviously this earlier email, and in particular, your recent voicemail. Today is my first day seeing this, as I have not been in the studio or monitoring daily email since the 1st of the year. I'll get a detailed look at this next week and will reply to you via email or voice during your working hours."

38. On July 2, 2018, counsel for the NYSE Group responded to Defendant McMahan via e-mail. Counsel for the NYSE Group requested a response from Defendants.

39. On October 3, 2018, counsel for the NYSE Group sent another letter to Defendant McMahan via e-mail and at the public address of Photo Archive requesting a response from Defendants.

40. Defendants never responded to NYSE Group or its counsel following the July 2, 2018 and October 3, 2018 communications from counsel for the NYSE Group.

41. Upon information and belief, the Defendants have not removed the Infringing Marks from the McMahan Website or their related merchandise as of the date of this Complaint.

**Defendants' Direct and Secondary Liability**

42. Upon information and belief, Defendant Photo Archive is a business operating in Brooklyn, New York. NYSE Group does not know if Photo Archive is a separate legal entity.

43. Upon information and belief, at all times relevant to this Complaint, Defendant McMahan has been the sole owner and operator of Photo Archive.

44. Upon information and belief, at all times relevant to this Complaint, Defendant McMahan has managed and directed Photo Archive, and has personally sold or offered for sale the services of Photo Archive, including the services at issue in this lawsuit, and has personally chosen and used the Infringing Marks to advertise, promote, market and sell the services of Photo Archive.

45. Upon information and belief, to the extent that Photo Archive is a separate legal entity, Defendant McMahan had, and continue to have, a direct financial interest in Photo Archive's infringing acts alleged above, and had and have the right or ability to supervise and control those infringing acts.

46. Upon information and belief, to the extent that Photo Archive is a separate legal entity, Defendant McMahan is the sole and dominant influence in Photo Archive, and directly control the acts of Photo Archive without regard for the latter's legal separateness. They are thus the alter egos of Photo Archive and are liable for the wrongful and illegal acts of Photo Archive as alleged herein.

47. Defendants' infringing use of the Infringing Marks is willful and in bad faith given Defendants' actual and/or constructive knowledge of NYSE Group's exclusive rights in the NYSE Marks by reason of, without limitation, NYSE Group's longstanding federal trademark Registrations for the NYSE Marks, NYSE Group's long-standing extensive and exclusive use of the NYSE Marks, and the communications between NYSE Group's counsel and the Defendants referenced above, following which Defendants continued to use the Infringing Marks.

48. Defendants' continued use of the Infringing Marks is without any permission or license from NYSE Group, is unfair, confuses, misleads and deceives or is likely to confuse,

mislead or deceive the public, dilutes the unique nature of the NYSE Marks through tarnishment or blurring, and has caused, and until enjoined, will continue to cause irreparable injury to NYSE Group's goodwill, identity, and reputation, for which NYSE Group has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF**
**Federal Trademark Infringement**
**(15 U.S.C. § 1114, Lanham Act § 32)**

49. NYSE Group repeats and incorporates by reference the previous paragraphs of this Complaint as if set forth in full herein.

50. Defendants' use of "New York Stock Exchange" and "NYSE" is identical, or confusingly similar, to the NYSE Marks in appearance, sound, meaning, and commercial impression, such that the use thereof is likely to cause confusion, mistake, and deception as to the source or origin of Defendants' services, and will injure and damage NYSE Group and the goodwill and reputation symbolized by the NYSE Marks.

51. Defendants' goods offered in connection with Defendants' use of "New York Stock Exchange" and "NYSE" are so related to the goods offered in connection with the NYSE Marks, that the public is likely to be confused, deceived, and to assume erroneously that Defendants' goods are those of NYSE Group, or that Defendants are in some way connected to or affiliated with, or licensed or sponsored by NYSE Group, all to NYSE Group's irreparable damage, as well as the public's detriment.

52. Likelihood of confusion is enhanced by the fact that the NYSE Marks are strong, well-known, and entitled to a broad scope of protection.

53. Likelihood of confusion is also enhanced by the fact that the Defendants' use of "New York Stock Exchange" and "NYSE" is visually and phonetically identical to or

substantially indistinguishable from the NYSE Marks, and Defendants' goods are closely related to NYSE Group's goods, such that the public is likely to be confused, deceived, and to assume erroneously that Defendants' goods are those of NYSE Group or that Defendants are in some way connected or affiliated with, or licensed or sponsored by NYSE Group, all to NYSE Group's irreparable damage.

54. Likelihood of confusion is even further enhanced by the fact that NYSE Group and Defendants market and will likely continue to market their respective services in the same or similar channels of trade.

55. Defendants are neither affiliated nor connected with NYSE Group, and have not been endorsed or sponsored by NYSE Group, nor has NYSE Group approved any of Defendants' goods offered or provided or intended to be provided by Defendants.

56. Defendants have never sought or obtained the permission of NYSE Group to use the NYSE Marks, nor has NYSE Group approved any of Defendants' goods offered or provided by Defendants.

57. NYSE Group provided actual notice to Defendants of the rights of NYSE Group in and to the NYSE Marks as identified above.

58. NYSE Group's United States Trademark Registrations for and containing the NYSE Marks identified above provide, at the very least, constructive notice to Defendants of the rights of NYSE Group in and to the NYSE Marks.

59. Thus, upon information and belief, Defendants knew or had reason to know of NYSE Group's NYSE Marks when Defendants began use of the NYSE Marks in U.S. commerce.

60. NYSE Group's trademark filings clearly establish that NYSE Group has senior trademark rights in its NYSE Marks, and consequently there is no question of priority of rights. As such priority clearly belongs to NYSE Group.

61. Defendants' use of the NYSE Marks in connection with Defendants' goods is likely to cause confusion, mistake, or deception of consumers as to the source of origin or sponsorship of the services, in violation of the Lanham Act, including but not limited to 15 U.S.C. § 1114.

62. Consumers are likely to purchase Defendants' goods being offered under the NYSE Marks believing them to be those of NYSE Group, thereby resulting in a loss of goodwill and economic harm to NYSE Group.

63. NYSE Group is informed and believes, and on that basis, alleges that Defendants have derived unlawful gains and profits from its infringing use of the NYSE Marks.

64. Upon information and belief, despite notice of NYSE Group's prior rights in the NYSE Marks, Defendants intentionally adopted and used the NYSE Marks, and despite having received actual notice of infringement, Defendants intentionally and willfully continues to use the NYSE Marks so as to create consumer confusion, and traffic off of NYSE Group's reputation and goodwill in connection with the NYSE Marks.

65. The goodwill of NYSE Group's business under the NYSE GROUP Marks is of great value, and NYSE Group will suffer irreparable harm should Defendants' infringement be allowed to continue to the detriment of the trade reputation and goodwill of NYSE Group, for which damage NYSE Group cannot be adequately compensated at law.

66. NYSE Group has no control over the quality of the services offered by Defendants. Thus, the great value of the NYSE Marks is subject to damage by an entity and individuals that NYSE Group cannot control.

67. Unless enjoined by this Court from so doing, Defendants will continue to engage in its acts of infringement, to the irreparable damage and injury of NYSE Group.

68. Upon information and belief, Defendants have engaged in acts of infringement, in violation of 15 U.S.C. § 1114, with knowledge of NYSE Group's exclusive rights in and to the NYSE Marks in connection with NYSE Group's services, and Defendants continues in such acts of intentional infringement, thus entitling NYSE Group to an award of treble its actual damages, Defendant's profits, plus attorneys' fees and costs in bringing and maintaining this action, pursuant to Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b)

## SECOND CLAIM FOR RELIEF
### Federal Trademark Dilution
### (15 U.S.C. § 1125(c), Lanham Act § 43(c))

69. NYSE Group repeats and incorporates by reference the previous paragraphs of this Complaint as if set forth in full herein.

70. The NYSE Marks have achieved widespread fame and prominence and are widely recognized by U.S. consumers as a designation of origin for the NYSE Group and its exchange services. The NYSE Marks became famous many years before Defendants first used the Infringing Marks in connection with exchange services The NYSE Marks are therefore famous within the meaning of 15 U.S.C. § 1125(c).

71. Defendants' use of the Infringing Marks, as alleged above, is likely to cause dilution of the famous NYSE Marks by blurring and/or tarnishment in violation of the Federal Trademark Dilution Act, codified at 15 U.S.C. § 1125(c).

72. Defendants' violations of the Federal Trademark Dilution Act have been, and continue to be, knowing, deliberate and willful.

73. Defendants' violations of the Federal Trademark Dilution Act have caused, and will continue to cause, great and irreparable injury to the NYSE Group. Unless such acts are restrained by this Court, Defendants' acts will continue, and the NYSE Group will continue to suffer great and irreparable injury.

74. The NYSE Group has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
### Federal Unfair Competition
### (15 U.S.C. § 1125(a), Lanham Act § 43(a))

75. NYSE Group repeats and incorporates by reference the previous paragraphs of this Complaint as if set forth in full herein.

76. NYSE Group is the sole owner of all right, title and interest in and to the NYSE Marks and their valid and incontestable Registrations, which have been duly registered with the United States Patent and Trademark Office.

77. The NYSE Marks are distinctive and serve as indicators of the source of NYSE Group's services.

78. Defendants' use of the Infringing Marks, and any other colorable imitations of the NYSE Marks, is a use in commerce of a word, term, name, symbol, or device, or combination thereof, and a false designation of origin, which is likely to cause confusion or mistake in the public mind or to deceive the public, as to the affiliation, connection or association of Photo Archive with NYSE Group, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by NYSE Group.

79. The aforementioned uses by Defendants constitute willful and intentional unfair competition in violation of 15 U.S.C. § 1125(a). Pursuant to 15 U.S.C. § 1117(a), NYSE is entitled to recover Defendants' profits and three times the actual damages sustained by NYSE Group from said violations, the costs of this action, and its reasonable attorney's fees.

80. In addition, Defendants' violations of 15 U.S.C. § 1125(a) have caused and, unless enjoined by this Court, will continue to cause irreparable injury to NYSE Group's goodwill, business identity, and reputation. NYSE Group is therefore entitled to a preliminary and permanent injunction enjoining and restraining Defendants from use of the NYSE Marks or any other mark that is confusingly similar to the NYSE Marks.

81. NYSE Group has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
**Trademark Infringement and Unfair Competition under New York Common Law**

82. NYSE Group repeats and incorporates by reference the previous paragraphs of this Complaint as if set forth in full herein.

83. NYSE Group owns valuable, current goodwill constituting property or a commercial advantage in the NYSE Marks, which has arisen and exists through public association in the minds of consumers between the NYSE Marks and the services offered by NYSE Group, which is capable of misappropriation by Defendants.

84. Defendants' adoption and use of the Infringing Marks, as alleged above, constitutes deliberate and bad faith copying of NYSE Group's NYSE Marks, which misappropriates NYSE Group's goodwill in the NYSE Marks, and is likely to confuse, mislead, or deceive the relevant consuming public into believing that Defendants' products and services are association with or related to NYSE Group.

EAST\157851973.6

85. As a consequence of Defendants' wrongful acts as alleged above, NYSE Group has been and is likely to continue to be substantially injured in its business, including injury to its goodwill and reputation, and loss of revenues and profits.

86. In misappropriating NYSE Group's goodwill in the NYSE Marks and competing unfairly with NYSE Group, Defendants have acted willfully, in bad faith, maliciously, wantonly, and without due regard for NYSE Group's rights.

87. NYSE Group is entitled to recover compensatory damages and punitive damages, in an amount to be determined at trial, for Defendants' acts of unfair competition.

88. Money damages alone cannot fully compensate NYSE Group for Defendants' misconduct. Unless Defendants are enjoined by this Court, they will continue to engage in common law trademark infringement and unfair competition as alleged above, thereby causing irreparable injury to NYSE Group and its business entity, goodwill, and reputation. NYSE Group is therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants from using the Infringing Marks and any NYSE Marks or colorable imitation thereof, alone or in combination with any other words or design, domain name, or any other term, in connection with the advertising, promotion, marketing, offering for sale or sale of any exchange or exchange-like services.

89. NYSE Group has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
**Injury To Business Reputation and Dilution**
**(N.Y. Gen. Bus. Law § 360-*l*)**

90. NYSE Group repeats and incorporates by reference the previous paragraphs of this Complaint as if set forth in full herein.

91. As a result of NYSE Group's extensive and continuous use of the NYSE Marks, and the strong nature of those marks, those marks have become distinctive and famous.

92. By its use of the Infringing Marks as set forth above, Defendants have injured the business reputation of the NYSE Group and diluted the distinctive quality of the NYSE Marks, in violation of New York General Business Law § 360-*l*.

93. Defendants' use of the Infringing Marks was and is done willfully and with the intention to trade on NYSE Group's reputation and/or to cause dilution of the NYSE Marks.

94. Defendants' wrongful acts as set forth above, unless restrained by this Court, are likely to cause both dilution by tarnishment and dilution by blurring of the NYSE Marks, to NYSE Group's irreparable injury.

95. NYSE has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, NYSE respectfully requests judgment against Defendants as follows:

A. Adjudging and determining that Defendants:

    a. Willfully infringed the NYSE Marks under 15 U.S.C. § 1114;

    b. Willfully diluted the NYSE Marks under 15 U.S.C. § 1125(c);

    c. Willfully committed and continues to willfully commit acts of false designation of origin, false or misleading description of fact, or false or misleading representation in violation of NYSE Group's rights under 15 U.S.C. § 1125(a);

    d. Infringed and diluted NYSE Group's trademark rights in violation of New York statutory and common law;

  e. Engaged in unfair competition in violation of New York statutory and common law; and

  f. Violated New York General Business Law § 360-*l*.

B. Ordering that Defendants, their officers, directors, partners, agents, subcontractors, servants, employees, representatives, franchisees, licensees, subsidiaries, parents, and related companies or entities, and all others acting in concert or participation with Defendants now or thereafter, refrain from:

  a. Using the Infringing Marks, the NYSE Marks, or any variation or colorable imitation of the NYSE Marks;

  b. Representing in any manner that Photo Archive is associated with, sponsored by, affiliated with, or in any way related to NYSE Group or that the products or services of Photo Archive are sponsored by, endorsed, authorized or approved by NYSE Group; and

  c. Unfairly competing with NYSE Group by using any name or trademark identical to or confusingly similar to any of the NYSE Marks.

C. Ordering that Defendants:

  a. Recall and destroy any advertising or promotional material bearing the Infringing Marks or any other mark identical to or confusingly similar to the NYSE Marks in any and all media at Defendants' cost;

  b. Take affirmative steps to dispel such false impressions that have been created by Defendants' uses of the NYSE Marks, including, but not limited to, corrective advertising directed to the trade and consumers; and

    c. Provide an accounting to determine all gains, profits, savings and advantages obtained by Defendants as a result of their wrongful actions.

D. Awarding NYSE Group:

    a. Its damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b), in an amount to be determined at trial, or, at NYSE Group's election at any time before final judgment is rendered, statutory damages pursuant to 15 U.S.C. § 1117(d);

    b. Restitution to NYSE Group of all gains, profits, savings, and advantages obtained by Defendants as a result of their wrongful actions;

    c. All of NYSE Group's costs and reasonable attorneys' fees incurred in investigating and prosecuting this matter; and

    d. Such other and further relief as this Court shall deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury for all causes and issues so triable.

Dated: New York, New York.
October 26, 2018

Respectfully submitted,

**DLA PIPER LLP (US)**


By: /s/ Tamar Y. Duvdevani

Tamar Y. Duvdevani
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY  10020-1104
212.335.4500
Tamar.Duvdevani@dlapiper.com

*Attorneys for Plaintiff NYSE Group, Inc.*

Paul A. Taufer
Michael L. Burns
DLA Piper LLP (US)
1650 Market Street, Suite 4900
Philadelphia, PA 19103
215.656.3300
Paul.Taufer@dlapiper.com
Michael.Burns@dlapiper.com

*Of Counsel for Plainiff NYSE Group, Inc.*